1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  NAZARETH RONDINELLI,            )  Civil No. 09cv31 WQH(RBB)
                                    )
12                    Plaintiff,    )  **REPORT AND RECOMMENDATION**
                                    )  **GRANTING IN PART AND DENYING**
13  v.                              )  **IN PART PLAINTIFF'S MOTION FOR**
                                    )  **SUMMARY JUDGMENT [DOC. NO. 12]**
14  MICHAEL J. ASTRUE, Commissioner )  **AND DEFENDANT'S CROSS-MOTION**
    of Social Security,             )  **FOR SUMMARY JUDGMENT [DOC. NO.**
15                                  )  **15]**
                      Defendant.    )
16                                  )
    _____ )
17

18              **I.   PROCEDURAL BACKGROUND**

19      Nazareth Rondinelli initially applied for disability insurance

20  benefits on December 9, 2004, but that application was denied on

21  February 11, 2005.  (Admin. R. 22, 79-83.)  Over a year later,

22  Plaintiff filed his current Application for Disability Insurance

23  Benefits on January 30, 2006, claiming disability as of October 6,

24  1996.  (Id. Attach. #1, 116-18.)

25      Plaintiff's current claim was denied on April 24, 2006,

26  because it dealt with issues addressed in his first claim for

27  benefits.  (Admin. R. 87-90.)  Rondinelli appealed on May 26, 2006,

28  but his appeal was denied on June 17, 2006.  (Id. at 94-99.)

Plaintiff also requested a hearing.  (Id. at 95.)  Administrative Law Judge Edward Steinman dismissed Rondinelli's claim on October 6, 2006, based in part on res judicata.  (Id. at 77-78.)

On December 5, 2007, the Appeals Council issued an order remanding Rondinelli's claim to Judge Steinman and finding that res judicata did not prevent the ALJ from deciding Plaintiff's claim on the merits because there was new and material evidence in the record.  (Id. Attach. #1, 113-14.)  Administrative Law Judge Steinman held a hearing on April 18, 2008.  (Admin. R. 36-71.)  He issued a written decision on May 13, 2008, finding Rondinelli was not disabled.  (Id. at 22-29.)  The denial of benefits became final when the Appeals Council upheld the decision on July 25, 2008. (Id. at 12-14.)

On January 8, 2009, Plaintiff filed a Complaint for Judicial Review & Remedy on Administrative Decision Under the Social Security Act against Michael J. Astrue, Defendant Commissioner of Social Security, challenging the denial of Plaintiff's claim for Disability Insurance benefits [doc. no. 1].  Defendant filed an Answer on July 10, 2009 [doc. no. 7] and filed the Administrative Record three days later [doc. no. 8].  The Court issued an Order Setting Deadline for Filing Pretrial Motions [doc. no. 9], but on September 29, 2009, the Court granted Plaintiff an extension of time to file a motion for summary judgment [doc. no. 11].

Plaintiff's Motion for Summary Judgment was timely filed on October 7, 2009 [doc. no. 12].  On November 17, 2009, the Court granted the parties' joint motion to extend the time in which Defendant could respond to Plaintiff's Motion [doc. no. 14].  On December 28, 2009, Defendant's Cross-Motion for Summary Judgment

[doc. no. 15] and an identical Opposition to Plaintiff's Motion for Summary Judgment [doc no. 16] were filed.

The Court finds this matter is suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).  S.D. Cal. Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court recommends **GRANTING IN PART** and **DENYING IN PART** Plaintiff's Motion for Summary Judgment [doc. no. 12], **GRANTING IN PART** and **DENYING IN PART** Defendant's Cross-Motion for Summary Judgment [doc. no. 15], and remanding this matter for further proceedings.

## II.  MEDICAL EVIDENCE

Nazareth Rondinelli was born on February 25, 1957.  (Admin. R. Attach. #1, 134.)  He claimed to be disabled as of October 6, 1996, due to back injuries.  (Admin. R. 22; id. Attach. #1, 164.)  The date he was last insured and eligible for benefits was December 31, 2000.  (Admin. R. 23; id. Attach. #1, 164.)

Dr. Rich Richley performed two laser diskectomies on Rondinelli shortly after his work injury on October 6, 1996, although records of these procedures are not contained in the medical evidence.  (Id. Attach. #5, 555.)

On January 9, 1998, Dr. Theodore Georgis performed a bilateral lumbar laminectomy and foraminotomy at level L3-4 and L4-5, and an interbody fusion at level L4-5.  (Id. at 554.)  The doctor examined Plaintiff on February 12, 1998, and noted that an X-ray showed the interbody cage and fusion were stable.  (Id. Attach. #2, 242.)  He next examined Rondinelli on April 16, 1998, and found that his posture and gait were "excellent," and he had good leg strength and motor strength.  (Id. at 239.)  The doctor examined Plaintiff on

May 28, 1998, and, after reviewing an X-ray, found that there was no instability.  (<u>Id.</u> at 237.)

Rondinelli saw Dr. Howard Tung on January 18, 1999, and he complained of severe back pain.  (<u>Id.</u> at 263.)  The doctor reviewed a CT scan and found that Plaintiff had disc protrusion and narrowing at the L3-4 level.  (<u>Id.</u>)  Nonetheless, Dr. Tung determined that Rondinelli should be considered permanent and stationary.  (<u>Id.</u> at 268.)

On July 28, 1999, Dr. Tung performed a lumbar laminectomy and fusion at the L3-4 level of Rondineli's back.  (<u>Id.</u> at 250.)  The doctor also re-explored the L4-5 level and performed a cage fusion.  (<u>Id.</u> at 250-51.)  Dr. Tung examined Plaintiff after his surgery on August 5, and September 16, 1999, and found that the cages at L3-4 were "in excellent position" and the cages at L4-5 were "stable." (<u>Id.</u> at 234-36.)  On April 18, 2000, Dr. Tung noted that Rondinelli had good strength in lis lower extremities; his gait was mildly antalgic; and a straight leg test was negative bilaterally.  (<u>Id.</u> at 257.)

The doctor completed a permanent and stationary report on May 30, 2000.  (<u>Id.</u> at 254.)  In his report, Dr. Tung opined that Rondinelli was partially disabled and could perform semi-sedentary work, described as sitting half of the workday, and sitting, standing, or walking the other half.  (<u>Id.</u>)  He specified some work preclusions:  no repetitive bending or twisting, no repetitive bending about the lumbar spine, and a weight lifting restriction of fifteen to twenty pounds.  (<u>Id.</u> at 255.)

Rondinelli saw Dr. Tung again on July 25, 2000, after he was injured in a motorcycle accident.  (<u>Id.</u> at 252.)  Dr. Tung tested

Plaintiff's strength in his legs and looked for any weakness;
Rondinelli's range of motion was unchanged; his forward flexion was
sixty to seventy degrees; and his extension was ten degrees. (<u>Id.</u>)
X-rays showed that Plaintiff's fusions were not damaged during the
accident, and Rondinelli remained permanent and stationary. (<u>Id.</u>
at 252-53.)

Dr. Bruce Van Dam completed an agreed medical evaluation
addendum report dated January 2, 2001, which referred to his
earlier November 27, 2000 agreed medical evaluation. (<u>Id.</u> at 272-
73.) In the addendum report, Dr. Van Dam discussed his review of a
diskography of the L1-2 and L2-3 levels and concluded, "These
findings help to confirm my opinion that Mr. Rondinelli more likely
than not continues to experience symptoms from an injury to the L2-
3 disk and a probable pseudarthrosis at L3-4." (<u>Id.</u> at 272.) The
doctor also explained, "It remains my opinion that Mr. Rondinelli
is not permanent and stationary unless he elects to defer further
surgical intervention." (<u>Id.</u> at 273.)

Dr. Van Dam submitted a second agreed medical evaluation
addendum report dated January 15, 2001, and opined that Rondinelli
was temporarily totally disabled because the fusion at level L3-4
had not healed, and Plaintiff had not undergone surgery on level
L2-3, despite "obvious abnormalities." (<u>Id.</u> at 274.) Dr. Van Dam
became Plaintiff's treating physician on January 26, 2001. (<u>Id.</u> at
276.) He operated on Rondineli on April 5, 2001. (<u>Id.</u> at 278.)
Specifically, Dr. Van Dam explored the L3-4 fusion, noting a
pseudarthrosis and bilateral pars interarticularis fractures; he
performed an interbody fusion at level L2-3 and a posterolateral
fusion at levels L2-4. (<u>Id.</u> at 278-79.)

On September 9, 2002, Maria Zouvas, A.T.C., evaluated Plaintiff and concluded that he was permanent and stationary, and he was limited to semi-sedentary work with a lifting limit of no more than ten pounds occasionally. (Id. at 287, 292.)

### III. THE ADMINISTRATIVE HEARING

On April 18, 2008, the administrative hearing was held before ALJ Steinman. (Admin. R. 36.)  Rondinelli and his attorney, Shanny Lee, were both present.  (Id.)  Judge Steinman also heard testimony from Walter Doren, a medical expert, and Gloria Lasoff, a vocational expert.  (Id. at 36, 50-68.)

At the hearing, Plaintiff testified regarding his medical condition and pain.  (Id. at 44-50.)  He explained that in October of 1996, his back pain, which had been building over time, reached a level which impeded his ability to move.  (Id. at 44.)  He went straight to his primary physician, Dr. Richley, who told him to stop working.  (Id.)  The doctor also performed two laser surgeries on Plaintiff's back in late 1996.  (Id. at 44-45.)  About a year after those surgeries, his condition worsened and he received his first surgical disc fusion in January 1998.  (Id. at 45.)

Rondinelli described the years of 1998 through 1999 as "very bad" and explained that there had been problems during his surgery, and although he was doing physical therapy and exercising, his pain got worse.  (Id. at 47-48.)  Plaintiff was in "severe, severe pain" and was "skeptical" of his doctors, so he began seeing Dr. Van Dam. (Id. at 48.)  The judge asked, "[I]s it essentially your position between October 6, [1996] and [December 31, 2000], that due to your surgeries and back pain, you couldn't do any kind of work activity?"  (Id.)  Rondinelli responded that it was.  (Id. at 49.)

6

Dr. Doren, the medical expert, testified that there were few MRIs or CT scans available from the relevant time period, but he noted that on December 16, 1997, Dr. Georgis found that Rondinelli's range of motion was limited, although there were no neurological abnormalities. (Id. at 51-52.) Dr. Georgis concluded there was disk protrusion with spondylosis, and he performed surgery in January 1998. (Id. at 52.) The doctor did not note any complications during surgery. (Id. at 53.) Immediately after surgery, Plaintiff was in a significant amount of pain, but he was fully mobilized and managed with pain pills and a brace. (Id.)

The medical expert explained that about four months after the surgery, "[Rondinelli] was distinctively doing quite well." (Id.) On May 10, 1999, about a year and a half after the surgery, an X-ray showed that there was no movement at the fusion, and objective tests showed there were still no neurological abnormalities. (Id. at 53-54.)

In July 1999, Plaintiff underwent another back surgery. (Id. at 54.) About ten months later, Dr. Tung completed his permanent and stationary findings, and released Rondinelli from ongoing care. (Id. at 54-55.) X-rays showed that there was no evidence of instability. (Id. at 55.) But Plaintiff had some residual back and sacroiliac pain with spasms. (Id.) Dr. Tung found that Rondinelli could perform semi-sedentary work, sitting half the time and standing and walking the other half. (Id.)

Plaintiff continued to experience pain, so he went to Dr. Van Dam who performed surgery three months after the disability eligibility period ended. (Id. at 55-56.) The medical expert noted that there were no CT scans that showed subtle arthrosis at

that time.  (Id. at 55.)  Dr. Van Dam also explored a different
fusion and found that it was not completely healed.  (Id. at 56.)
But the medical expert testified that six months earlier there was
enough soft tissue stability to allow Rondinelli perform well on
the flexion and extension tests.  (Id. at 56.)

   The medical expert concluded that Plaintiff did not meet or
equal a disability listing for a period lasting one year anytime
between October 6, 1996 through December 31, 2000.  (Id.)  He also
agreed with Dr. Tung's analysis of Rondinelli.  (Id. at 57.)
Rondineli's attorney questioned the medical expert about the
preferred method for objectively diagnosing back injuries.  (Id. at
57-61.)  Dr. Doren explained that an MRI provides more objective
and specific evidence of back injury than a diskogram.  (Id. at
60.)

   The ALJ presented hypothetical questions to the vocational
expert, Gloria Lasoff, based on Dr. Tung's, Dr. Van Dam's, and Dr.
Doren's assessments of Rondinelli.  (Id. at 62, 64-65.)  The
vocational expert listed three positions that a person with "semi-
sedentary" and "less than a full range of light work" could
perform.  (Id.)  The occupations were production assembler,
production inspector, and garment folder, which were all light
positions.  (Id. at 63-64.)

   The ALJ also posed hypotheticals to the vocational expert
based on Rondinelli's testimony about his pain and limitations.
(Id. at 65-66.)  The vocational expert testified that there would
be no work available under those circumstances.  (Id. at 66.)  And
Rondinelli's attorney asked some questions of the vocational expert

regarding the residual functional capacity limitation.   (Id. at 66-
67.)

**IV.   THE ALJ'S DECISION**

After considering the record, ALJ Steinman made the following
relevant findings:

> 3.   Through the date last insured, the
> claimant has the following severe impairments:
> spinal stenosis and degenerative disc disease of
> the lumbar spine; status post three back surgeries
> with residual pain (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.   Through the date last insured, the
> claimant did not have an impairment or combination
> of impairments that met or medically equaled one
> of the listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525 and 404.1526).
>
> . . . .
>
> 5.   After careful consideration of the
> entire record, the undersigned finds that, through
> the date last insured, the claimant had the
> residual functional capacity to lift or carry 15-
> 20 pounds; sit for 50 percent of the workday;
> either stand or walk for 50 percent of the
> workday; minimal demand for physical effort; no
> repetitive bending, twisting or bending about the
> lumbar spine.
>
> . . . .
>
> 10.   Through the date last insured,
> considering the claimant's age, education, work
> experience, and residual functional capacity,
> there were jobs that existed in significant
> numbers in the national economy that the claimant
> could have performed (20 CFR 404.1560(c) and
> 404.1566).

(Id. at 24-25, 27.)

Based on all of the above, Judge Steinman concluded that
Rondinelli was not entitled to disability insurance benefits from

9

October 6, 1999, through December 31, 2000, the date he was last insured.  (Id. at 28.)

## V.   STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show two things:  (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West Supp. 2009).  An applicant must meet both requirements to be classified as "disabled."  Id.

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the SSA to seek judicial review of the Commissioner's final agency decision.  42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2009).  The Court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It means "'more than a mere scintilla but less than a preponderance[]'" of the evidence.  Bayliss, 427 F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601).

09cv31 WQH (RBB)

"'[T]he court must consider both evidence that supports and the evidence that detracts from the ALJ's conclusion . . . .'"  Frost v. Barnhart, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

To determine whether a claimant is "disabled," the Social Security regulations use a five-step process outlined in 20 C.F.R. § 404.1520 (2010).  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000)).  Although the ALJ must assist the applicant in developing a record, the applicant bears the burden of proof during the first four steps.  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999).  If the fifth step is reached, however, the burden shifts to the Commissioner.  Id. at 1098.  The steps for evaluating a claim are as follows:

Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

**Step 4.**  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "<u>not disabled</u>" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

**Step 5.**  Is the claimant able to do any other work? If not, then the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "<u>not disabled</u>" and therefore not entitled to disability insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is "<u>disabled</u>" and therefore entitled to disability benefits.

<u>Id.</u> at 1098-99 (footnotes and citations omitted); <u>see also Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  <u>Id.</u> After a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision.  <u>Id.</u>

"If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."  <u>Flaten v. Sec'y Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).  Instead, it must uphold the denial of benefits if the evidence is susceptible

to more than one rational interpretation, one of which supports
the ALJ's decision.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th
Cir. 2005).

**VI.   DISCUSSION**

**A.   Plaintiff's Residual Functional Capacity**

    **1.   Plaintiff's Argument**

Rondinelli contends that the administrative law judge found
that he had the residual functional capacity to perform sedentary
work with some additional limitations, but the jobs identified by
the vocational expert were light jobs.  (Mot. Summ. J. Attach. #1
Mem. P. & A. 4.)  "The ALJ finding that Mr. Rondinelli could do
these jobs is [sic] flies in the face of his limitation to
sedentary work."  (<u>Id.</u>)  Thus, the findings regarding Plaintiff's
ability to perform other work are not supported by substantial
evidence.  (<u>Id.</u>)

    **2.   Defendant's Argument**

Defendant asserts that the ALJ characterized Plaintiff's work
residual functional capacity as "semi-sedentary" and "less than a
full range of light" during the administrative hearing.  (Cross-
Mot. Summ. J. Attach. #1 Mem. P. & A. 4.)  Judge Steinman's
residual functional capacity findings are actually "beyond the
requirements of sedentary work consistent with many demands of
light work."  (<u>Id.</u> at 5 (emphasis omitted).)  Defendant explains,
"Plaintiff correctly notes that the ALJ asserted Plaintiff was not
capable of the full range of sedentary work[;]" however, the only
aspect of Rondinelli's residual functional capacity that does not
equal sedentary work is the sitting requirement.  (<u>Id.</u>)  The jobs
identified by the vocational expert "allow any combination of

13

sitting and standing." (Id.)  Thus, there is no error in the
administrative law judge's decision.

### 3.  Applicable Standards

The claimant bears the burden of establishing his disability
and the medical severity of physical and mental impairments which
prevent him from engaging in substantial gainful activity.
Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R.
§§ 404.1520(b)-(f), 416.920(b)-(f) (2010).  At step five of the
disability analysis, the burden shifts to the Commissioner to show
that the claimant can perform other gainful work that exists in
substantial numbers in the economy.  Reddick v. Chater, 157 F.3d
715, 721 (9th Cir. 1998).

If the ALJ's decision is supported by substantial evidence
and properly applied law, it will not be reversed for harmless
error.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.
1990).  The ALJ may rely on the testimony of the vocational expert
to make "specific findings showing that the claimant has the
physical and mental capacity to perform specified jobs, taking
into consideration the requirements of the job as well as the
claimant's age, education, and background."  Hall v. Sec'y of
Health, Educ. & Welfare, 602 F.2d 1372, 1377 (9th Cir. 1979).

Hypotheticals posed to the vocational expert must include
"'all of the claimant's functional limitations, both physical and
mental' supported by the record."  Thomas v. Barnhart, 278 F.3d
947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562,
570-71 (9th Cir. 1995)); accord Andrews v. Shalala, 53 F.3d 1035,
1043 (9th Cir. 1995).  Where an incomplete hypothetical is posed,
the vocational expert's opinion that the claimant can perform jobs

in the national economy is not supported by competent evidence. Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

The ALJ may properly limit questioning of the vocational expert to only physical impairments, if there are no mental impairments supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001); see also Bayliss, 427 F.3d at 1217. "[A]n ALJ may accept or reject alleged restrictions in a hypothetical question that are not supported by substantial evidence." McHugh v. Astrue, No. C 06-3616 JL, 2008 WL 3876475, at *5 (N.D. Cal. Aug. 18, 2008) (citing Osenbrock, 240 F.3d at 1164-65); accord Bradford v. Astrue, No. EDCV 07-1022-JTL, 2008 WL 2523833, at *7 (C.D. Cal. June 20, 2008).

### 4.   The ALJ's Findings

During the administrative hearing, the ALJ presented several hypothetical questions to the vocational expert, the first was based on Dr. Tung's assessment of Plaintiff. (Admin. R. 62.)  The ALJ restated Dr. Tung's findings that Rondinelli's condition was permanent and stationary at a semi-sedentary level limited to "one half time in sitting position, one half in standing and walking. Minimal demands with physical effort.  No repeated bending . . . restricted movement of his back.  And the weight restriction was 15 to 20 pounds . . . and that also includes pain . . . ."  (Id. 62.)  Judge Steinman asked, "[T]his is less than a full range of light work, correct?"  (Id.)  The vocational expert agreed and explained that out of the 1,400 light job titles in the grid, Rondinelli could perform approximately "50 percent."  (Id. at 63.)

Three available light positions were production assembler, production inspector, and garment folder. (Id. at 63-64.)

The ALJ's second hypothetical was based on Dr. Van Dam's post-surgery, permanent and stationary report from September 2002. Rondinelli was "limited to semi-sedentary, one half the time sitting, one half time standing and walking with minimal physical demands whether sitting, standing or walking." (Id. at 64.) The vocational explained that Plaintiff could perform the same jobs that had been identified previously. (Id.)

The administrative law judge posed another hypothetical, which was based on Dr. Doren's assessment of Rondinelli. (Id. at 65.) Dr. Doren agreed with Dr. Tung's findings, so the vocational expert responded that the same jobs were available. (Id.)

Rondinelli's attorney also posed some questions to the vocational expert regarding the Plaintiff's residual functional capacity limitation, spending half of the workday sitting and half of the workday standing. (Id. at 66-67.) The attorney asked, "What would be the tolerance in terms of switching from one of those positions to the other?" The vocational expert responded, "These particular jobs could be done at will." (Id. at 66.) Rondinelli's attorney stated, "These are probably bench work and it didn't matter whether he was sitting or standing." (Id. at 67.) Judge Steinman asked the vocational expert if that was the case, and she confirmed that it was. (Id.)

In his decision, ALJ Steinman made the following findings regarding Plaintiff's residual functional capacity:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical Vocational Rule 201.21.

However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimants' age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as: a production assembler (DOT no. 706.687-010) (light/svp-2), with 1,000 regional jobs and 200,000 national jobs; production inspector (DOT no. 559.687-074) (light/svp-2), with 700 regional jobs and 75,000 national jobs; and garment folder (DOT no. 789.687-066) (light/svp-2), with 1,500 regional jobs and 300,000 national jobs.

(Id. 27-28.)

Social Security Rulings define "sedentary work" as including the following:

[L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. . . .  'Occasionally' means occurring from very little up to one-third of the time.  Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 (1983).

Social Security Rulings define "light work" as follows:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. . . .  'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or

17

> carrying requires being on one's feet up to two-thirds
> of a workday, the full range of light work requires
> standing or walking, off and on, for a total of
> approximately 6 hours of an 8-hour workday.  Sitting may
> occur intermittently during the remaining time.  The
> lifting requirement for the majority of light jobs can
> be accomplished with occasional, rather than frequent,
> stooping.

Id. at **5-6.

Administrative Law Judge Steinman described Plaintiff's residual functional capacity to the vocational expert as less than the full range of light work but more than sedentary work.  The lifting limitation of twenty pounds placed it above sedentary work, but the requirement that Plaintiff spend half of the day sitting and half of the day standing placed it below light work.  As the Social Security Ruling explains, "[T]he primary difference between sedentary and most light jobs" is the frequency of walking and standing.  Id. at *5.  The vocational expert testified that a claimant with the residual functional capacity described by the judge could perform "less than the full range of light work." (Admin. R. 62.)  The vocational expert identified three jobs that could be performed.  (Id.)  The ALJ relied on the vocational expert's testimony.  See Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d at 1377.

The ALJ describes Rondinelli's residual functional capacity as sedentary work with some additional limitations.  (Admin. R. 28.)  Judge Steinman relied on the testimony of the vocational expert that, with Rondinelli's background and capacity, Plaintiff could perform certain representative occupations:  production assembler, production inspector, and garment folder.  (Id.)  Other than state that the expert's testimony was consistent with the

Dictionary of Occupational Titles, the ALJ did not reconcile his finding that Plaintiff had a semi-sedentary residual functional capacity with the conclusion that Rondinelli could perform three light work positions.

### B.   Development of the Record

#### 1.   Plaintiff's Argument

Plaintiff argues that ALJ Steinman failed in his duty to develop the record because there was a January 2, 2001 report from Dr. Van Dam which refers to his earlier November 27, 2000 report, that was not included as evidence in the medical record.  (Id. Attach. #3 Mem. P. & A. 5.)  Plaintiff also argues that because the ALJ did not have the November 27, 2000 report, he rejected the doctor's opinion without reviewing the evidence.  (Id. at 6.)  Plaintiff concludes, "[The ALJ's] rejection of Dr. Van Dam's opinion is not supported by substantial evidence and is based on an error of law."  (Id.)

#### 2.   Defendant's Argument

Defendant asserts that it is undisputed that Plaintiff suffers from degenerative spinal problems.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 5.)  Defendant notes that Dr. Van Dam's November 27, 2000 report was created for a Workers' Compensation examination held a month before Plaintiff's disability insurance status expired.  (Id. at 6.)  Defendant argues that the doctor's opinion that Rondinelli was temporarily disabled "has no bearing on the ALJ's conclusion . . . ."  (Id.)  "Workers' Compensation examinations are geared toward a claimant's existing employer and job and it is also not in dispute that Plaintiff could not return to any of his past work."  (Id.)  Furthermore, Plaintiff's

attorney was satisfied with the medical record because he "expressly stated he had no objection to the record as it existed." (Id.)

### 3. Applicable Standards

Rondinelli has the duty to prove that he is disabled. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C.A. § 423(d)(5)(A); <u>Clem v. Sullivan</u>, 894 F.2d 328, 331 (9th Cir. 1990)). In Social Security cases, "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C.A. § 423(d)(5)(A).

Rondinelli was responsible for "bring[ing] to [the Social Security Administration's] attention everything that shows that [he was] blind or disabled." 20 C.F.R. § 404.1512(a) (2010) (noting that the Social Security Administration will only consider the impairments the claimant says he has or those about which it receives evidence); <u>see also</u> <u>Fullerton v. Astrue</u>, No. CV-07-3074-CI, 2008 WL 5102344, at *3 (E.D. Wash. Dec. 1, 2008) (explaining that the claimant bears the burden of notifying the ALJ of a condition that impacts the disability decision through submission of objective evidence, not by simply making isolated and unsupported assertions). The Social Security Administration assists the claimant in developing the medical record based on the information provided. <u>See</u> 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history . . . . We will make every reasonable effort to help you get medical reports from your own

medical sources when you give us permission to request the reports.").

But "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (citations omitted)). There is a greater responsibility to develop the record when a claimant is not represented by counsel. Id.; see also Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) ("[T]he ALJ is not a mere umpire at such a proceeding, but has an independent duty to fully develop the record . . . .")

"[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Higbee, 975 F.2d at 561 (citing Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)) (referring to the ALJ's duty to conduct an adequate hearing and develop the administrative record). But see Cisco v. Astrue, 288 F. App'x 342, 344 (9th Cir. 2008) (finding that the ALJ did not have a duty to develop the record where claimant was unresponsive to requests for updated medical records and evaluations, and had previously waived his right to appear and testify at the hearing).

The ALJ's duty to develop the record is triggered when there is "[a]mbiguous evidence, or the [ALJ finds] that the record is inadequate to allow for proper evaluation of the evidence . . . ." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

<u>Smolen</u> 80 F.3d at 1288; <u>Armstrong v. Comm'r of Soc. Sec. Admin.</u>, 160 F.3d 587, 590 (9th Cir. 1998)) (quotations omitted); <u>see also</u> <u>Baghoomian v. Astrue</u>, 319 F. App'x 563, 566 (9th Cir. 2009) (agreeing that the ALJ need not take additional steps to develop the record even though the treating physician's opinion was not supported objective evidence because the record as a whole was not ambiguous or inadequate); <u>Lusardi v. Astrue</u>, No. 08-35712, 2009 WL 3497739, at *2 (9th Cir. Oct. 9, 2009) (finding that the ALJ did not err in failing to develop the record because the evidence that claimant's mental impairments were not severe was not ambiguous or inadequate).

The ALJ decides whether the evidence is inadequate in light of the record as a whole.  <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1150.  If needed, the ALJ can develop the record by subpoenaing or questioning claimant's physician, continuing the administrative hearing, or keeping the record open so it may be supplemented. <u>Id.</u> (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998); <u>Smolen</u>, 80 F.3d at 1288); <u>see also</u> 20 C.F.R. § 416.912(e)-(f) (2010).

Courts have found error when the administrative law judge fails to request additional records if the ALJ, or a doctor or medical expert on whose testimony he relies, has indicated that further evidence is important to assessing the disability claim. <u>See</u> <u>Struck v. Astrue</u>, 247 F. App'x 84, 86 (9th Cir. 2007); <u>accord</u> <u>Coleman v. Astrue</u>, No. 07-CV-1722-JM (JMA), 2009 WL 861864, at **10-11 (S.D. Cal. Mar. 26, 2009).  Additionally, it is error not to develop the record where the medical evidence is ambiguous because of the "obvious vicissitudes" in claimant's health.  <u>Webb</u>

v. Barnhart, 433 F. 3d 683, 687 (9th Cir. 2005) (noting that claimant's "conditions improved and worsened as a result of [his] afflictions and their treatments[]"); see also Hornbeck v. Astrue, 248 F. App'x 790, 791 (9th Cir. 2007) (explaining that the ALJ erred by failing to accept records claimant presented at the administrative hearing because they could have helped resolve "ambiguities as to the vicissitudes" in claimant's health) (citing Webb, id.). The ALJ has a duty to request medical source statements about what the claimant can still do when the submitted opinions are not sufficiently clear and raise an ambiguity. Lewis v. Comm'r Soc. Sec. Admin., 293 F. App'x 495, 496 (9th Cir. 2008); Ireland v. Astrue, 256 F. App'x 79, 82 (9th Cir. 2007).

### 4. The Medical Record

A disability report was completed for Rondinelli on December 9, 2004, shortly after he first applied for disability benefits. (Admin. R. Attach. #1, 134, 136.) He alleged a disability onset date of October 7, 1996. (Id. at 134.) On January 16, 2005, Plaintiff submitted a pain questionnaire and identified Dr. Bruce Van Dam as his primary physician. (Id. at 145, 148.) He noted that Dr. Van Dam had prescribed pain medications for him. (Id. at 146.)

On February 2, 2005, in connection with his prior claim for benefits, Rondinelli completed a second disability report in which he asserted that he first visited Dr. Van Dam in 1999 and received surgery on his back from the doctor in 2001. (Id. at 149, 152-53, 154.) In another disability report, Plaintiff indicated that he first visited Dr. Van Dam on January 1, 2000. (Id. at 156, 160-61.)

In his disability report-appeal, completed on April 17, 2006, after his current application for benefits, Rondinelli again asserted that he first saw Dr. Van Dam on January 1, 2000. (Id. at 174-75, 183.)  He also submitted another disability report dated April 19, 2006, and explained that his first visit to Dr. Van Dam was on January 1, 2000. (Id. at 190, 194, 196.) Plaintiff's attorney completed a final disability report appeal dated September 20, 2006, and noted that Rondinelli first saw Dr. Van Dam on January 1, 2000.  (Id. Attach. #2, 208, 209, 215.) Thus, although Rondinelli provides inconsistent dates for when he first visited Dr. Van Dam, Plaintiff alleges that he was examined by the doctor before his eligibility for disability insurance benefits expired on December 31, 2000.

On February 16, 2006, Plaintiff's attorney submitted medical evidence from Dr. Van Dam to the Social Security Administration. (Id. Attach. #3, 386.)  The additional documents included a lumbar spine impairment questionnaire, dated December 2, 2005, and medical records dated June 24, 2005, and February 4, 2006.  (Id.) Rondinelli's attorney also provided medical records from Sharp Health Care from August 23, 2005 through April 7, 2006, to the Office of Hearings and Appeals on August 1, 2006.  (Id. at 397.) But the November 27, 2000 agreed medical evaluation by Dr. Van Dam, which is the subject of the current dispute, was not provided.

Also contained in the medical records was a letter from Dr. Van Dam to Plaintiff's attorney dated October 28, 2005, in which the doctor stated, "This is to confirm that I have evaluated and treated Mr. Rondinelli for the same lumbar spine injury since the

year 2001." (<u>Id.</u> Attach. #4, 494.)  In a letter from Dr. Van Dam

to Rondinelli's attorney on February 4, 2006, the doctor wrote,

"Mr. Rondinelli was referred to me for an Agreed Medical

Evaluation on May 10, 1999 . . . .  Eventually the insurance

carrier and applicant's attorney designated me primary treating

physician on January 26, 2001." (<u>Id.</u> Attach. #7, 717.)  Thus, the

information provided by Dr. Van Dam was conflicting as to whether

he treated Rondinelli before December 31, 2000, the last date

Plaintiff was eligible for disability insurance benefits.

On August 11, 2006, Rondinelli's attorney submitted medical

records to the Social Security Office of Hearings and Appeals.

(<u>Id.</u> Attach. #2, 216.)  Among the documents provided were notes

from Plaintiff's visits to Dr. Van Dam on September 9, and October

28, 2005.  (<u>Id.</u>)  The attorney again did not provide the November

27, 2000 agreed medical evaluation.  (<u>Id.</u>)

On March 31, 2008, Plaintiff's attorney submitted more

medical information to Administrative Law Judge Steinman in

advance of the hearing scheduled for April 18, 2008.  (<u>Id.</u> at

217.)  The November 27, 2000 agreed medical evaluation by Dr. Van

Dam was not included.  (<u>Id.</u> at 218-20.)

Rondinelli's attorney submitted a prehearing statement of the

case on April 11, 2008.  (<u>Id.</u> at 221-28.)  He explained that

Plaintiff had been treated by Dr. Van Dam from May 10, 1999

through March 13, 2008.  (<u>Id.</u> at 224-25.)  But the November 27,

2000 agreed medical evaluation by Dr. Van Dam was not produced or

specifically referred to.  (<u>Id.</u>)  Plaintiff provided 32 pages of

medical records from Dr. Van Dam, and 153 pages of records from

the doctor had previously been provided.  (<u>Id.</u> at 272-300; <u>id.</u>

1  Attach. #3, 301-04, 386-96; _id._ Attach. #4, 493-94; _id._ Attach.

2  #5, 578-719.)

3      Among the additional documents was an agreed medical

4  evaluation addendum from Dr. Van Dam dated January 2, 2001, that

5  referred to his November 27, 2000 agreed medical evaluation.  (_Id._

6  Attach. #2, 272-73.)  In the January 2, 2001 addendum, Dr. Van Dam

7  stated, "Please recall that in the report of November 27, 2000 I

8  expressed the opinion that Mr. Rondinelli more likely than not has

9  a pseudarthrosis at L3-4 . . . and persistent abnormalities

10  . . . ."  (_Id._ at 272.)  He opined, "It remains my opinion that

11  Mr. Rondinelli is not permanent and stationary unless he elects to

12  defer further surgical intervention."  (_Id._ at 273.)

13      On April 18, 2008, a hearing was held before Administrative

14  Law Judge Steinman; both Rondinelli and his attorney were present.

15  (Admin. R. 36.)  The judge described the documents contained in

16  the medical record and asked Plaintiff's attorney if he had any

17  objections; he had none.  (_Id._ at 38-39.)

18      During the hearing, Rondinelli explained that he first went

19  to see Dr. Van Dam "[s]ometime, I believe late '99."  (_Id._ at 48.)

20  The medical expert interjected, "It was -- Dr. [Van Dam], you saw

21  him in 2001, Your Honor."  (_Id._)  The ALJ added, "So it seems that

22  you [Rondinelli] have some of your dates confused and the doctor

23  has the advantage of having the medical records."  (_Id._)  After

24  discussing his pain during that period of time Rondinelli asked,

25  "Then it was April 5 of 2001 that I had the surgery with Dr. [Van

26  Dam][?]"  (_Id._ at 48-49.)  The ALJ answered, "right."  (_Id._ at

27  49.)

28

During the hearing, Plaintiff's attorney was questioning the medical expert regarding myelograms and diskograms when Rondinelli interjected, "And in 2000 I had some digital scan in Dr. [Van Dam]'s office." (<u>Id.</u> at 59.)  The ALJ did not attempt to clarify the date during this exchange.

After the vocational expert answered the ALJ's hypothetical, Plaintiff testified that after his 1999 visit with one of his other doctors, he went to Dr. Van Dam. (<u>Id.</u> at 69.)  Rondinelli claimed that Dr. Van Dam reviewed his medical records, took a "digital format x-ray," and diagnosed him with an "unhealed fusion." (<u>Id.</u>)  Judge Steinman stated, "You're talking about in 2001?" (<u>Id.</u>)  Rondinelli responded that he was. (<u>Id.</u>)

ALJ Steinman concluded the hearing by asking Rondinelli's attorney whether there were any other issues to discuss. (<u>Id.</u> at 71.)  Counsel raised no other matters, so Judge Steinman closed the record and concluded the hearing. (<u>Id.</u>)  ALJ Steinman, the medical expert, the vocational expert, Rondinelli, and Rondinelli's attorney did not specifically mention Dr. Van Dam's January 2, 2001 addendum or the November 27, 2000 agreed medical evaluation during the administrative hearing.

Attached to Plaintiff's October 7, 2009 Motion for Summary Judgment is the agreed medical exam that Dr. Van Dam performed on November 27, 2000. (Mot. Summ. J. Attach. #2 Ex. A at 1-6.)  Dr. Van Dam notes that he last evaluated Rondielli on May 10, 1999, and opined that he was not permanent and stationary as of that date. (<u>Id.</u> at 1-2.)  As part of his November 27, 2000 evaluation, the doctor found that Plaintiff had "persistent abnormalities at L2-3 as well as probable pseudarthrosis at L3-4." (<u>Id.</u> at 5.)

Dr. Van Dam stated, "[I]t is my opinion that Mr. Rondinelli is not permanent and stationary. . . . [H]e is temporarily totally disabled." (Id. at 5.)

### a.   Rondinelli's Burden

Rondinelli and his attorney have failed to satisfy the claimant's burden to produce medical evidence. See generally, 42 U.S.C.A. § 423(d)(5)(A); Mayes, 276 F.3d at 459; Clem, 894 F.2d at 331.  Rondinelli inconsistently described the date of his first visit to Dr. Van Dam.  His attorney supplemented the record several times before the hearing, but failed to submit the November 27, 2000 agreed medical evaluation.  Plaintiff's attorney also did not inform Judge Steinman that medical records were missing.  And there is no evidence that Judge Steinman or the medical expert believe they needed additional records for the disability determination. See generally, Tonapetyan, 242 F.3d at 1150; Coleman, 2009 WL 861864, at *10; Fullerton, 2008 WL 5102344, at *3.

### b.   Duty to Obtain Dr. Van Dam's November 27, 2000 Agreed Medical Evaluation

Although Rondinelli did not produce the November 27, 2000 agreed medical evaluation from Dr. Van Dam to support his claim of disability, Plaintiff contends that the January 2, 2001 addendum, which refers to the previous exam, triggered a duty to seek additional medical records from the doctor, and the ALJ's failure to do so was error.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 5-6.)

As noted above, the ALJ's duty to develop the record is not triggered by mere notice that medical records are missing.  It is triggered when there is "[a]mbiguous evidence, or the [ALJ has

28

found] that the record is inadequate to allow for proper evaluation of the evidence . . . ." Tonapetyan, 242 F.3d at 1150; Coleman, 2009 WL 861864, at *10.  Whether the evidence is inadequate is decided by the administrative law judge in light of the record as a whole.  Tonapetyan, 242 F.3d at 1150.

In addition to Dr. Van Dam's January 2, 2001 addendum to his agreed medical evaluation and other medical records, ALJ Steinman had been provided with (1) the medical records of Dr. Theodore Georgis for December 16, 1997, through November 4, 1999, (2) an operation report from Scripps Memorial Hospital dated July 28, 1999, (3) Scripps medical records from January 30, 1998, through June 24, 2005, (4) Dr. Howard Tung's medical records from November 4, 1999, through July 25, 2000, (5) a plan of treatment from InCare Health Services dated April 10, 2001, (6) medical records from Dr. John Qian for October 6, 2003, through January 20, 2005, and May 23, 2006, through June 16, 2006, (7) a residual functional capacity assessment completed by Dr. David Haaland on February 7, 2005, (8) medical records from Sharp Health Care for August 23, 2005, through April 7, 2006, (9) Dr. Sam Maywood's medical evaluation dated December 12, 2000, (10) medical records from Dr. Robin Vaughan for March 16 and April 9, 2001, and (11) medical records from Dr. David Smith for September 12, 2001, through April 29, 2002.  (Admin. R. Attach. #2, 233-71; id. Attach. #3, 302-85, 397-400; id. Attach. #4, 401-92, 498-500; id. Attach. #5, 501-77.)

Judge Steinman determined that Rondinelli had severe impairments based on Plaintiff's history of back pain beginning in 1991, three back surgeries, a 1997 MRI which "showed degenerative disc disease of the lumbar spine with mild stenosis but no frank

disc herniation[,]" and a lumbar diskogram from December 12, 2000,

that was "negative at L1-2 and positive at L2-3 with an intact

disc at that level." (Admin. R. 25 (citations omitted).)

ALJ Steinman also found the following:

> During the period in adjudication, the claimant
> has been consistently neurologically intact. His
> opinion of spinal instability is inconsistent with X-
> ray studies and MRI scans after the surgeries that show
> no signs of instability of the spine. Even after the
> date last insured, Dr. Van Dam's progress notes are not
> consistent with his limits. By July 12, 2002, the
> claimant was off all medications and Dr. Van Dam
> recommended that the claimant initiate a one year
> membership at a fitness facility. In his permanent and
> stationary report dated September 11, 2002, Dr. Van Dam
> noted that the claimant was not taking any analgesic
> medications and exam was unremarkable except for the
> elimination in flexion on to 30 degrees and extension
> to 10 degrees. Indeed, Dr. Van Dam concluded that the
> claimant was limited to semi-sedentary work with a
> limit to performing work that involves one-half sitting
> and one-half standing or walking with minimal demands
> whether sitting, standing or walking. Dr. Van Dam's
> permanent and stationary opinion is much more
> consistent with the overall record and is given more
> weight as it was closer in time to the period in
> adjudication than the 2008 opinion that was rendered
> eight years after the date last insured.
>
> I have given greater weight to the well-supported
> opinion of Dr. Tung contained in his permanent and
> stationary report that the claimant is limited to semi-
> sedentary work with the ability to sit for 50 percent
> of the time and stand or walk for 50 percent of the
> time which the minimum of demands for physical effort
> whether standing, walking or sitting; lift or carry 15-
> 20 pounds; and avoid repetitive bending, twisting, or
> bending about the lumbar spine. Dr. Tung's opinion is
> consistent with his progress notes that show clinical
> findings supportive of his functional assessment.

(Id. at 26-27 (citations omitted).)  The ALJ concluded that

Rondinelli had the residual functional capacity to perform the

full range of sedentary work.  (Id. at 25.)

At the administrative hearing, Rondinelli testified regarding

his medical condition and pain.  (Id. at 43-50.)  The judge found

30

that claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.  (<u>Id.</u> at 25.)

Judge Steinman also heard testimony from a medical expert and vocational expert.  (<u>Id.</u> at 50-68.)  Although the medical expert noted the absence of any MRIs or CT scans before the end of 2000, there is no indication that the record was ambiguous or inadequate.  (<u>Id.</u> at 51-52); <u>see also</u> <u>Tonapetyan</u>, 242 F.3d at 1150; <u>Coleman</u>, 2009 WL 861864, at *10.  The November 27, 2000 agreed medical evaluation indicates that x-rays were taken on that day.  (Mot. Summ. J. Attach. #2 Ex. A at 3.)

The ALJ performed a thorough and detailed evaluation of Plaintiff's disability claim based on the medical evidence submitted by several doctors and hospitals.  The ALJ did not fail in his duty to develop the record.  <u>See</u> <u>Cisco v. Astrue</u>, 288 F. App'x at 344 (stating that the record was neither ambiguous nor inadequate because it showed the "absence of any significant work-related functional limitations").  Judge Steinman cannot be faulted for Rondinelli's failure to ensure that all of his medical records were provided or, at the very least, clearly inform the ALJ that an additional relevant agreed medical evaluation from Dr. Van Dam was missing from the record.

Although Plaintiff complains that Dr. Van Dam's November 27, 2000 report was not part of the record, its contents are reflected in correspondence from Dr. Van Dam dated January 2, 15, and 26, 2001.  (<u>Compare</u> Admin. R. Attach. #2, 272-77, <u>with</u> Mot. Summ. J. Attach. #2 Ex. A.)  Dr. Van Dam's opinions were before the ALJ.

The evidence as a whole was sufficient for a proper evaluation of Plaintiff's claim. Cisco, 288 F. App'x at 344. Judge Steinman did not see was a need for additional evidence from Dr. Van Dam, and neither did any other doctor or expert. See Struck, 247 F. App'x at 86 ("[B]oth the ALJ and the medical expert who testified at the ALJ's request concluded that inpatient treatment records from two recent hospitalizations of Struck were important to assessing her claim."); Coleman, 2009 WL 861864, at **10-11 (holding that ALJ failed to develop the record when he failed to give the MRI submitted by plaintiff to the doctor and request supplemental testimony).

Rondinelli's condition was not marred by intermitted setbacks and periods of stability indicating that additional records could explain "obvious vicissitudes" in his health. See Webb 433 F. 3d at 687; see also Hornbeck, 248 F. App'x at 791. Thus, looking at the record as a whole, the evidence relating to Plaintiff's impairments was not ambiguous or inadequate. Tonapetyan, 242 F.3d at 1150.

For all of these reasons, ALJ Steinman did not err by failing to request the November 27, 2000 agreed medical evaluation from Dr. Van Dam, because the record as a whole was not ambiguous or inadequate. See Baghoomian, 319 F. App'x at 566; Lusardi, 2009 WL 3497739, at *2.

### c. Rejecting Dr. Van Dam's Opinion

Plaintiff argues that it was error for the ALJ to reject Dr. Van Dam's opinion without reviewing all the evidence. (Mot. Summ. J. Attach. #1 Mem. P. & A. 6.)

According to 20 C.F.R. § 404.1527(d), a treating physician's opinion must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2) (2010). If the treating physician's opinion is not given controlling weight, the following factors are applied in determining what weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physican, and (6) any other factors brought to the attention of the ALJ which tend to support or contradict the opinion. Id. § 404.1527(d)(2)(i)-(ii), (d)(3)-(6).

Opinions of treating physicians may only be rejected under certain circumstances. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

The standard for determining whether an ALJ properly rejected the opinion of a treating physician varies. If the treating doctor's opinion is not contradicted by another physician, the ALJ must give clear and convincing reasons for rejecting it. Thomas

v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Spelatz

v. Astrue, 321 F. App'x 689, 692 (9th Cir. 2009); Lester, 81 F.3d

at 830.

On the other hand, if the treating physician's opinion is

contradicted, "[t]he ALJ must give specific, legitimate reasons

for disregarding the opinion of the treating physician.'"   Batson,

359 F.3d at 1195 (quoting Matney v. Sullivan, 981 F.2d 1016, 1019

(9th Cir. 1992); see also Lingenfelter v. Astrue, 504 F.3d 1028,

1042 (9th Cir. 2007).  An ALJ may discredit opinions "that are

conclusory, brief, and unsupported by . . . objective medical

findings."  Batson, 359 F.3d at 1195.

"The opinion of an examining physician is, in turn, entitled

to greater weight than the opinion of a nonexamining physician."

Lester v. Chater, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908

F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450,

1454 (9th Cir. 1984)).  Similar to the standard for treating

physicians, if the examining doctor's opinion is not contradicted,

the ALJ must give clear and convincing reasons for rejecting it.

Id.  "[T]he opinion of an examining doctor, even if contradicted

by another doctor, can only be rejected for specific and

legitimate reasons that are supported by substantial evidence in

the record."  Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d

1035, 1043 (9th Cir. 1995)).

Prior to December 31, 2000, the date Rondinelli was last

eligible for disability benefits, Dr. Van Dam was Plaintiff's

examining physician, not his treating physician.  (Admin. R.

Attach. #7, 717.)  At the time of the hearing, ALJ Steinman had

Dr. Van Dam's agreed medical evaluation addendum report dated January 2, 2001, which stated:

> Please recall that in the report of November 27, 2000 I expressed the opinion that Mr. Rondinelli more likely than not has a pseudarthrosis at L3-4 (the site of a stand-alone interbody cage fusion) and persistent abnormalities at L2-3 (not addressed at the time of the last surgery July 28, 1999).

(Id. Attach. #2, 272.)  The doctor reviewed a diskography of L1-2 and L2-3 and assessed, "These findings help to confirm my opinion that Mr. Rondinelli more likely than not continues to experience symptoms from an injury to the L2-3 disk and a probable pseudarthrosis at L3-4."  (Id.)  Dr. Van Dam also explained, "It remains my opinion that Mr. Rondinelli is not permanent and stationary unless he elects to defer further surgical intervention."  (Id. at 273.)

In his decision, ALJ Steinman stated the following:

> I have given little weight to the opinions of Dr. Van Dam contained in the forms, 'Spinal Impairment Questionnaire' dated February 4, 2006; and dated January 18, 2008.
>
> His opinion regarding the claimant's functional capacity is well after the period in adjudication.  He had been referred for an Agreed Medical Evaluation on May 19, 1999.  It was not until January 26, 2001 (after the date last insured) that he became the claimant's attending physician.

(Admin R. 26 (citations omitted).)  Judge Steinman did not specifically address Dr. Van Dam's earlier opinions contained in his January 2, 2001 addendum.

As discussed above, the administrative law judge found that between October 6, 1996, and December 31, 2000, Rondinelli suffered from the severe impairments of "spinal stenosis and degenerative disc disease of the lumbar spine; status post three

back surgeries with residual pain." (<u>Id.</u> at 24 (citations
omitted)).  The ALJ referred to Plaintiff's three back surgeries
and a December 12, 2000 diskogram to support that finding.  (<u>Id.</u>
at 25.)

   Judge Steinman also considered other evidence from Dr. Van
Dam and concluded that Rondinelli had been "consistently
neurologically intact." (<u>Id.</u> at 26.)  The judge found that Dr.
Van Dam's opinion that Plaintiff's spine was not stable was
inconsistent with x-rays and MRIs performed after his surgeries
and inconsistent with the doctor's progress notes.  (<u>Id.</u>)
Additionally, Rondinelli was not using pain medication by July 12,
2002, and Dr. Van Dam recommended he join a fitness facility.
(<u>Id.</u>)  The ALJ found that "Dr. Van Dam's permanent and stationary
opinion [dated September 11, 2002] is much more consistent with
the overall record and is given more weight as it was closer in
time to the period in adjudication than the 2008 opinion that was
rendered eight years after the date last insured." (<u>Id.</u> at 26-
27.)  The report noted that Rondinelli was not taking analgesic
medication and his exam was unremarkable, except for a slight
limitation in flexion and extension.  (<u>Id.</u> at 26.)  "Dr. Van Dam
concluded that the claimant was limited to semi-sedentary work
with a limit to performing work that involves one-half sitting and
one-half standing or walking with minimal demands whether sitting,
standing or walking[.]"  (<u>Id.</u> at 27.)

   The ALJ explained that he gave greater weight to the opinion
of Dr. Tung because his findings were well-supported by the
record.  (<u>Id.</u>)  Dr. Tung had concluded "that the claimant is
limited to semi-sedentary work with the ability to sit for 50

percent of the time and stand or walk for 50 percent of the time

with the minimum of demands for physical effort whether standing,

walking or sitting; lift or carry 15-20 pounds; and avoid

repetitive bending, twisting, or bending about the lumbar spine."

(Id.)   Judge Steinman found that Dr. Tung's opinion was

"consistent with his progress notes that show clinical findings

supportive of his functional assessment."  (Id.)

But Judge Steinman did not gave specific and legitimate

reasons for rejecting the opinions contained in Dr. Van Dam's

January 2, 2001 agreed medical evaluation addendum, which restated

his opinion from November 27, 2000, that Plaintiff likely had a

pseudarthrosis at L3-4 and persistent abnormalities at L2-3 and

that Rondinelli was not permanent and stationary.  (Id. Attach.

#2, 272-73.)  The doctor's addendum contained his opinions from

January 2001, just after the disability period ended, and

reiterated his opinions from November 2000, just before the

disability period ended.  (Id.)  He restated these opinions on

January 15, and 26, 2001.  (Id. at 274-77.)  Although the ALJ gave

specific and legitimate reasons for giving little weight to Dr.

Van Dam's opinions from 2006 and 2008, well beyond the disability

period, he provides no explanation regarding the doctor's opinions

during and immediately after the disability period.  "[I]f the ALJ

rejects significant probative evidence, he must explain why."

Lusardi v. Astrue, No. 08-35712, 2009 WL 3497739, at *2.  "The ALJ

is responsible for resolving conflicts in the medical record."

Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th

Cir. 2008).  For these reasons, a remand is in order to address

Dr. Van Dam's opinions contained in the January 2, 15, and 26,

2001 addendum and correspondence.  If on remand the judge concludes that the record is inadequate to allow him to properly evaluate the physician's opinion, he may consider including Dr. Van Dam's agreed medical evaluation, dated November 27, 2000, in the analysis.  See Ireland, 256 F. App'x 82.

### C.   Credibility

#### 1.   Plaintiff's Argument

Plaintiff argues that "[t]he ALJ's reasons [for finding his allegations of pain and limitation not credible] are not specific to Mr. Rondinelli." (Mot. Summ. J. Attach. #1 Mem. P. & A. 7.) Plaintiff asserts that Judge Steinman's reasons "are nothing more than general reasons for rejecting credibility." (Id.)

#### 2.   Defendant's Argument

Defendant contends that the judge properly "noted [that] the weight of the objective evidence did not support the degree of limitation Plaintiff has alleged." (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 6.)  Defendant also argues:

> Instead of explaining why the ALJ's multiple reasons for finding Plaintiff not credible were erroneous in any manner, Plaintiff lists the ALJ's reasons and then claims he does not need to be "utterly incapacitated" to be eligible for disability benefits and also that the ALJ's reasoning was not specific to him.

(Id. at 7-8 (citation omitted).)  Defendant asserts that because the ALJ did not find that Rondineli was not credible due to his daily activities, the reference to case law regarding activities of daily living, Smolen v. Chater, 80 F.3d at 1270, 1284 (9th Cir. 1996), is inapposite. (Id. at 8.)  Defendant concludes, "[T]he

ALJ most certainly made credibility findings specific to Plaintiff." (Id.)

### 3. Judge Steinman's Credibility Findings

ALJ Steinman held that Rondinelli's impairments could be expected to produce the alleged symptoms of pain and limitations, but "claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with that residual functional capacity." (Admin. R. 25.) He wrote:

The weight of the objective evidence for the period in adjudication does not support the claims of the claimant's disabling limitations to the degree alleged. While exams show some reduced range of motion of the lumbar spine, the claimant has been consistently neurologically intact. He has a normal gait and does not need any assistive devices to ambulate, except when recovering from surgeries. Straight leg raise testing has been negative.

The record does not show that the claimant requires any special accommodations (e.g., special breaks or positions) to relieve his pain or other symptoms.

In contrast to the allegations of the claimant's disabling fatigue and weakness, he does not exhibit any significant disuse muscle atrophy, loss of strength, or difficulty moving that are indicative of severe disabling pain.

Although the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in his favor, the objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms. Moreover, the claimant has not alleged any side effects from the use of medications.

There is no evidence of loss of weight due to loss of appetite due to pain.

There is no evidence of sleep deprivation due to pain.

Consequently, the claimant's allegations are not credible to establish a more restrictive residual functional capacity than that found above.

1   (<u>Id.</u> at 25-26 (citations omitted).)

2              **4.   Clear and Specific Reasons**

3       An ALJ may reject a claimant's subjective pain or symptom

4   testimony entirely if the claimant fails to produce any objective

5   medical evidence of an impairment that could reasonably be

6   expected to cause the claimed symptoms or pain.  <u>Cotton v. Bowen</u>,

7   799 F.2d 1403, 1407 (9th Cir. 1986), <u>superseded</u> <u>by</u> <u>statute</u> <u>on</u>

8   <u>other</u> <u>grounds</u> <u>as</u> <u>recognized</u> <u>by</u> <u>Bunnell v. Sullivan</u>, 912 F.2d 1149,

9   1154 (9th Cir. 1990); <u>accord</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>,

10  359 F.3d 1190, 1196 (9th Cir. 2004).  The severity of pain need

11  not be proven by objective medical evidence; the medical evidence

12  must only show that it "could reasonably have caused some degree

13  of the symptom."  <u>Smolen v. Chater</u>, 80 F.3d at 1282 (citing <u>Orteza</u>

14  <u>v. Shalala</u>, 50 F.3d 748, 749-50 (9th Cir. 1994); <u>Fair v. Bowen</u>,

15  885 F.2d 597, 601 (9th Cir. 1989)).

16      The level of pain experienced from a given physical

17  impairment varies from person to person.  <u>Smolen</u>, 80 F.3d at 1282

18  (citing <u>Fair</u>, 885 F.2d at 601).  "Unless there is affirmative

19  evidence showing that the claimant is malingering, the

20  Commissioner's reasons for rejecting the claimant's testimony must

21  be 'clear and convincing.'"  <u>Reddick v. Charter</u>, 157 F.3d 715, 722

22  (9th Cir. 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th

23  Cir.1995).  The ALJ must provide specific, cogent reasons for not

24  believing a claimant's subjective complaints.  <u>Rashad v. Sullivan</u>,

25  903 F.2d 1229, 1231 (9th Cir. 1990) (citations omitted).  There

26  must be specific findings "stat[ing] which pain testimony is not

27  credible and what evidence suggests the complaints are not

28  credible."  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).

                            40

Social Security Ruling 96-7p provides the standard.

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

It is not enough to merely list multiple factors to discredit pain testimony without explaining how those factors affected the claimant's credibility. Cooper v. Sullivan, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989). The ALJ's finding must be specific enough to allow a reviewing court to conclude that the finding is based on permissible grounds and is not arbitrary. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995); see also Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the ALJ must build an accurate and logical connection between the evidence and the decision).

"[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." Light, 119 F.3d at 792 (citing Lester, 81 F.3d at 834; Cotton, 799 F.2d at 1407 (explaining "'[e]xcess pain' is, by definition, pain that is unsupported by objective medical findings[]")); see also Soc. Sec. Ruling, No. 96-7p, 1996 WL 374186, at *5-6 (stating that in evaluating credibility, the entire record, including the claimant's pain testimony and the

absence of objective medical evidence substantiating pain, must be considered).

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.

Light, 119 F.3d at 792 (citations omitted).  "The ALJ can disregard a claimant's self-serving statements if they are unsupported by objective findings."  Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) (citations omitted).

Questions of credibility are left to the ALJ to resolve. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (citing Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).  But the ALJ "cannot insulate ultimate conclusions regarding disability from review by turning them into questions of 'credibility.'" Jones v. Heckler, 760 F.2d 993, 997 (9th Cir. 1985).

Plaintiff does not fault any of Judge Steinman's particular reasons for discrediting Rondinelli's credibility.  (Mot. Summ. J. Attach. #1 Mem. P. &. 7.)  Instead, he attacks the conclusions as general and not specific.  (Id.)  Plaintiff's contention is undermined by a review of the ALJ's decision and the record.

ALJ Steinman referred to objective medical evidence, such as the straight leg test, range of motion test, and neurology findings, in making his credibility finding.  (Admin. R. 25-26); see Maounis, 738 F.2d at 1034.  He also commented on Rondinelli's ability to walk unassisted and his lack of special accommodations. (Admin. R. 26.)  The ALJ discredited Plaintiff's claim of disabling fatigue and weakness by noting he had not lost muscle

mass or strength, and he did not have a loss of appetite or sleep deprivation.  (Id.); see Cooper, 880 F.2d at 1158 n.13.  Judge Steinman noted that Plaintiff was taking prescribed medications for his impairments, but at the same time, they had effectively controlled Rondinelli's symptoms.  (Admin. R. 26.)

ALJ Steinman did not simply list reasons for discrediting claimant's subjective disability without an explanation, his reasoning is sufficiently specific.  Where the ALJ has made specific findings, "supported by substantial evidence in the record, our role is not to second-guess that decision." Fair, 885 F.2d at 604.  Thus, the ALJ did not err in evaluating Rondinelli's subjective pain and limitation allegations.

### VII.   CONCLUSION AND RECOMMENDATION

"The decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing Paqter v. Massanari, 250 F.3d 1255, 1258 (9th Cir. 2001)).  If the AlJ's decision is not supported by substantial evidence, remand or reversal is appropriate. Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir. 1984).

For the reasons stated above, the Court recommends **GRANTING IN PART** and **DENYING IN PART** Plaintiff's Motion for Summary Judgment [doc. no. 12], **GRANTING IN PART** and **DENYING IN PART** Defendant's Cross-Motion for Summary Judgment [doc. no. 15].  The Court recommends affirming the decision of the administrative law judge, with a limited remand.  On remand to the Social Security Administration, the administrative law judge should explain how

1   Plaintiff's residual functional capacity would allow him to

2   perform work classified as "light" and explain his reasons for

3   rejecting Dr. Van Dam's opinions contained in the agreed medical

4   evaluation addendum and correspondence dated January 2, 15, and

5   26, 2001.

6       This Report and Recommendation will be submitted to the

7   United States District Court Judge assigned to this case, pursuant

8   to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file

9   written objections with the Court and serve a copy on all parties

10  on or before June 3, 2010.  The document should be captioned

11  "Objections to Report and Recommendation."  Any reply to the

12  objections shall be served and filed on or before June 17, 2010.

13  The parties are advised that failure to file objections within the

14  specified time may waive the right to appeal the district court's

15  order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17  DATED: May 20, 2010

    Ruben B. Brooks
18                                      United States Magistrate Judge

19  cc:  Judge Hayes
         All Parties

20

21

22

23

24

25

26

27

28